Good morning, Your Honors. Carl Augan from the Federal Health Defender's Office in Los Angeles for Mr. SOTO. I am going to try to save two minutes of my time for rebuttal and I will try to keep track of my time. The arrest issue in this case basically turns on which of two cases you think our case is closer to. But in considering that question, I would ask Your Honors to picture what happens. You've got a young man with his wife and toddler child in the car. He's been pulled into his driveway. A van swoops in behind him. A police officer walks up to him and says come back here with me and walks him back to the van. Two other officers drive up and get out of their car in the driveway right next to him, standing there a car length away. The officer driving the van walks up in front of him and stands by his wife and his car between him and his apartment. And out in the street somewhere in the vicinity, there's another car with two other officers. Standing there. So he's got an officer in front of him, between him and his apartment, an officer with him at the police van who took him back there, a police van on one side of him, two other officers to the other side, and a couple more officers out in the street. Your Honors, I would submit that that is, if not just like the Beck case, very like the Beck case. In the Beck case, it was nine officers in four cars separating three defendants from each other. Here it's seven officers in four cars separating one defendant from his wife and toddler child. Basically, I think what this case is about on the arrest issue is you've got a case with facts about as close as you get, given that each case has its own facts. And I submit that there therefore was an arrest and that that meant that everything that followed from it was a fruit and should have been suppressed. I don't have a lot more to say about that issue because it's really a matter of comparing the cases. But I did want to talk to you about the acceptance and responsibility issue where I think, again, it's important to understand the unusual circumstances of this case. I think one fact we have to accept in reviewing it is that the police did not have their weapons drawn. I think the judge made a finding and I think I'm stuck with that. I think it would be a very easy case for the defense if the police had their weapons drawn. But with Beck, of course, no weapons were drawn. And so I don't think you need that given Beck. But you're right. I think we have to assume that fact for your honor's review. On the acceptance and responsibility issue, we also have some very strong facts. First of all, Mr. Soto consistently accepted responsibility in multiple ways starting on the very day he was arrested. He began by telling the officers about the gun and the drugs. Hold on. Let me ask you something more specific about that third point. It looked to me as though he was willing all along to plead to counts 1 and 3 as long as they dismissed count 2. Correct. He affirmed... The fact of the matter is, though, he did not plead to counts 1 and 3. He went to trial on counts 1 and 3. Now at trial, he told the jury, I'm not contesting counts 1 and 3. Not quite correct, your honor. He did plead to count 3. He pleaded to count 3 before trial. He entered a conditional guilty plea to count 3. And a week before trial, we filed a motion basically saying we either want to enter a conditional plea or if the government won't agree to a conditional plea, we want a severance and a trial on stipulated facts. Wait a minute. You can argue it, but I want to make sure I've got the facts right. He pleaded to count 3 before trial? Yes. He pleaded to count 3 the day of trial and indicated in pleading... Wait. I said before trial. You said day of trial. Well, before the trial started. He pleaded to count 3 before the jury was impaneled? Yes. And he signaled and offered that he was going to either that or do a trial on stipulated facts a week before. But he did plead to count 3 before the jury was impaneled. And now on count 1, he did not, right? Correct. But on count 1, we told the jury in opening statement and closing argument, find him guilty. On count 1, all the facts on count 1, the drug charge, were facts they had to prove for the 924C charge anyway. So they weren't required to present any evidence. They weren't going to have to present. The only thing they maybe had to present was evidence about the quantity of drugs. If he didn't plead to it in advance, they had to present it in order to convict him of count 1. I mean, you can stand up there in opening statement and say we're not going to contest his guilt on count 1. And if they don't put on proof of one of the elements, you're still entitled to a motion for judgment of acquittal granted. Right. But the same evidence had to be presented for the 924C charge because the 924C charge requires proof of the underlying drug offense. So the 924C charge fully encompasses... You wouldn't have that if you pleaded to count 1. Well, I think they'd still have to present the evidence to the jury probably.  But the bottom line is he offered to them. He told them up front three or four weeks before trial, he said I'll enter a conditional plea to both counts 1 and 3 if you'll drop the 924C charge I'm not guilty of. Then a week... That's just bargaining. To me, that doesn't entitle him to the third point. I'll plead to the counts where I don't have the mandatory consecutive... Two weeks before trial, he offered to enter an unconditional plea. I mean, basically the only reason the government went to trial, the only reason the government... Without the government agreeing to anything, you can just go in and plead straight up to count 1. I mean, it is true that we were saying we want you to drop the charge we're not guilty of, but the bottom line is, Your Honor, the only reason this case went to trial is because he contested a charge he was found not guilty of. That's the only reason the government had to do any work in this case. And to say that that means he gets a higher sentence or not a lower sentence... First of all, are you arguing that the... You're not arguing, however, that the guidelines provision actually applies or should apply. You're arguing that it's unconstitutional that it doesn't apply. Yes, at least as applied in this case. And secondly, did you... And Judge Kleinfeld may have already covered this, but... The count on which you essentially confessed error as soon as the trial started, did you tell the government you were going to do that? Did you tell the government, don't prepare for that, we're going to just confess error? No, while we told the government... In terms of the purpose of the guideline, which is, I gather, that the government shouldn't have to prepare for our trial, they did have to prepare for trial because they didn't know that you were going to do this. I would submit that that preparation they had to do was exactly what they had to do for the 924C charge they were insisting on proceeding on anyway. Because to prove the 924C charge, you have to prove the drug traffic... All right, so, to go back to your issue, I have two questions that would be helpful to focus on because I think it's an interesting question. One is, whether it isn't precluded by precedent, including Villasenor, Sazer, and other cases. I understand that the provision was changed somewhat. And the second was, how does Booker interact with this, which you don't address in your brief at all. That's the interesting question. Actually, I did address it a little bit in my reply brief, Your Honor. I tried to add a little subsection on it. I don't think Booker affects this because the case law since Booker, I think, is quite clear, and I cite one Ninth Circuit case and there's others... Well, for example, the guidelines now say that in order to get this, the government has to make a motion for it, which I find somewhat troublesome. But the judge could say, well, forget it, I'm going to do it, even though the government didn't make a motion for it, right? There's two reasons Booker doesn't save the government here, Your Honor. First of all, under the cases following Booker, it's quite clear that the defendant is entitled to a correct calculation of the guidelines. And I would submit that extends to a defendant being entitled to a constitutional application of the guidelines. But that's circular. I mean, if it's not mandatory, can it be unconstitutional? Well, I think it can be because it's something the judge has to give some weight to. Now, this judge in particular gave quite clear weight to the guidelines in this case. He calculated a guideline range of 46 to 57 months, and then he used that guideline range to set a sentence and guide it. If he had wanted to give the man the extra point because he thought it was just unfair that he should not get the full acceptance or responsibility credit, he could have done that under Booker, right? Well, he couldn't have given him the extra point, but he could have said... He wouldn't have given him the point. He would have given him the equivalent. Equivalent. But this judge, and depending on the judge you're dealing with, some judges, even after Booker, treat the guidelines as having more or less weight. And this judge, I think quite clearly, if you look at his sentencing analysis, he did a guideline sentencing analysis, and then he basically said, I don't think there's something to convince me to do something different than the guidelines. So you're basically saying that the... Which is possible. That the weight that the post-Booker world requires to be given to the guidelines, whatever it is, that it needs to be considered and it's one of the factors in 3553 is enough to give rise to whatever constitutional problem there may be. I am. And especially if you... You know, I cite two different district court opinions about the relative weight to be given the guidelines. There's Judge Cassell's opinion from Utah which says there'd be given great weight There's an opinion from Wisconsin which is sort of they're just one of the equal factor among many. Especially if a judge is leaning towards the first of those views, which this judge pretty clearly appeared to be doing, it becomes very important. What about the precedent then? Well, Your Honor, I think the precedent is not applicable here. Or the precedent that does exist is more in favor of the defense. The government cites the Corbett case and the Nairmor case. Both those cases are very distinguishable. In Corbett, the defendant got a higher sentence because he contested a charge he was convicted of. Mr. Soto contested a charge he was acquitted of. In Nairmor, the court took pains to point out that the defendant could have avoided the higher sentence by advising the government of his intent to plead guilty if his motion were denied because the government then wouldn't have been doing any work. Here, Mr. Soto couldn't do that. If he didn't advise them of his intent, he certainly offered to plead guilty. He filed a pleading a week beforehand as to the felon in possession charge. The reason the work happened was because they wanted to try a charge he was not guilty of. Counsel, you're over time now, so you should probably wind it up. The only other comment I'd make with respect to precedent, Your Honors, and I won't repeat it, but if the Court would look at page 19 of my opening brief, I discuss how very like this case is to the McKinney and Eiler cases. I think those are actually the closer precedent on the facts of this case. Thank you. Thank you, Counsel. Good morning, and may it please the Court. I'm Yang Soo Kim for the United States. I'd like to address briefly the arrest issue and then move on to the acceptance of responsibility issue. With respect to the arrest issue, the district court unequivocally found that not only were no weapons drawn in this case at any point by any of the officers until after the defendant had been arrested, the district court also clearly found that the defendant was at no point ordered out of his car. Rather, as one officer was approaching the driver of the vehicle, the driver was already getting out of the car. He was then not ordered to come with the officer to the back of a van that was blocking the defense vehicle. He was asked to do so. They then had a brief conversation at which point the defendant basically confessed. It's false. As far as your understanding of what our mental process is, what are we trying to understand when we're trying to understand the difference between a Terry stop and an arrest? We're not trying to understand whether he was free to leave because in either case he's not free to leave. What are we trying to – I've always had trouble with this. What is the sort of mental object that we're looking at? Your Honor, the cases are a little bit underdeveloped on that point. They often talk about whether an average person who was innocent of a crime would believe that he was under arrest. But that kind of begs the question what under arrest means. The Patterson case, I think, does explicate what that notion means. And what it says is that a person in those circumstances would believe that he was being detained indefinitely. Is that what it means or does it mean that he's being charged with a crime as opposed to investigated for a crime? I think that that is incorporated into the concept explicated by the Patterson case, which is that in one situation, the arrest situation, a person isn't reasonably going to believe that he's going to be able to go after this encounter with the police, but rather he's going to be arrested on charges. In the other situation, the police have unquestionably stopped him, restricted his liberty, in some cases where it's justified for the purposes of officer safety, demonstrated force. Drawing guns is in some cases permissible, but the person nevertheless reasonably believes that he is going to be allowed to leave. And in this case, given that the search undisputedly took place at night, given that the police knew that this was a drug dealer that they were looking after, given the fact that the defendant's family was not ordered out of the car, as in the Black case, given all of those facts and given the undisputed findings, none of which are challenged by the defendant on this appeal, I would submit that this case is an even clearer case than the Patterson case of there not being an arrest, but rather just a temporary stop. Unless the Court has any questions on that issue, I'd like to address the acceptance of responsibility issue. As Judge Kleinfeld, I think you were pointing out, this is not a situation where a defendant pleads guilty to a certain counts of the indictment and then proceeds to trial and then is subsequently acquitted on all of the counts that he went to trial on. In those situations or in such a circumstance, which is not presented by this case, the government would concede that there would – the defendant would have a much stronger case that a 3E1.1b should not bar the defendant from getting the third point in those circumstances. But that's not the issue here, as I understand it. It's not. I don't understand the defendant ultimately to be arguing that he should have gotten the acceptance of responsibility point as the guidelines are written. He's arguing that there was a constitutional burden on his right to defend himself in not giving it to him, unconstitutional burden. Yes, Your Honor. There are, I believe, as I analyzed the case, two different kinds of attacks being made on 3E1.1b. There's a facial challenge that I think is pretty much put to rest by this case's – this Court's precedents, the Naramore case, the Villaseñor-Cesar case, and also the Supreme Court's case in Corbett. All of those cases hold unequivocally that notwithstanding a general principle about not burdening a defendant's right to proceed to trial, that nevertheless, given the importance of plea bargaining in the criminal justice system, that the defendant can provide incentives. They can provide a carrot to defendants who plead guilty. So to put it plainly, the general principle of law is you can't burden the right to go to trial because it's a constitutional right, but the Supreme Court and the Ninth Circuit have determined specifically that you can have a codified discount for pleading guilty, and that's okay. That is one way to look at it, Your Honor. In the cases that I was citing, they deal with the language, the broad language in these other cases that arise with respect to other portions of 3E1.1B or, excuse me, 3E1.1A, and they say, notwithstanding, there is, with respect to the plea bargaining situation, the government can, absent indication of retaliation, extend a carrot. And I would also note, Your Honors, that this is true, and we see this in other provisions of the guidelines as well. For example, there I guess you would argue that the whole plea bargaining system is such a carrot, essentially. Yes, Your Honor. But in this case, we're not talking about plea bargaining versus going to trial. It's not quite that simple. If you look at the language of 3E1.1B, I think that that actually supports the government's position as well, because the guideline doesn't say if you go to trial, you will not receive this one point. It doesn't say if you plead guilty, you will not receive the one point. You could plead guilty, but if you don't do so in a timely manner that saves the government the resources and time of preparing for trial, then you may not get the third point. But what about the – he only argues in passing, but I find it troublesome, and I wonder why it was added, the provision that it has to be on motion by the government. Yes, Your Honor. There are two points on that. First of all, this case doesn't present that question, because what the district judge determined in this case is that it had discretion. And what it then said is that I'm declining to exercise the discretion that I believe – But the afterbook of this doesn't really matter. I think that that's essentially what the district judge concluded in this matter. The government hasn't appealed that, and therefore, that issue of whether that particular aspect of Section B is unconstitutional or not, it's not presented by this appeal. Rather, what the defendants claim is that the very fact that the provision only benefits people who plead guilty in a timely manner that saves the government resources, that that is unconstitutional, facially and as applied. With respect to the as applied challenge, the critical fact is that he proceeded to trial on the first count, on the possession count, and he was convicted on that count. In United States v. Ginn, this Court held that to be – The government didn't have to put – do anything on that, in fact, as a practical matter, that it didn't have to do anyway on the count that he was acquitted on. Well, Your Honor, I would respectfully disagree with that contention. There's a world of difference between someone pleading guilty and thereby giving the government the finality of knowing that that conviction is going to apply to the first count, and then going to trial, notwithstanding the defendant's saying in his own opening statement and closing argument that the jury should convict him of the first count. The jury can do whatever it wants. And, therefore, there is a big difference between the two in terms of the finality and the certainty that the government has provided. It's true that the evidence is mostly overlapping, but that just supports the notion that there was – there was a burden placed on the government by the defendants choosing – choosing for tactical reasons so that he could say to the jury, convict him of this count, don't convict him of this other count, thereby bolstering the appearance of reasonableness of his position. For tactical reasons, he proceeded to trial, even though he could have pled unconditionally, openly, to that first count. He didn't do that. You're over time. Thank you, Your Honor. Thank you, counsel. United States v. Soto is submitted.
judges: Noonan, Kleinfeld, Berzon